Wood, J.
In the count under consideration, it is recited, in substance, that certain premises, embracing three acres and a quarter of ground, with a steam saw and grist-mill, and two dwelling-houses thereon, with the appurtenances, situate, etc., were in the possession and occupancy of the said Bowen Eaton under a contract lor the sale and conveyance of the same to Isaac Eaton, which contract was executed by the said Bowen Eaton, and the *288 said plaintiff, Stauffer, on August 21, 1839; and by which contract the said Bowen Eaton agreed to make, in thirty days from the date of said contract, to the said plaintiff, his heirs and assigns forever, a good warranty deed of about fifteen acres of land, situate, etc., with a (urnace thereon, and to give said plaintiff immediate possession thereof, and the said plaintiff, by said contract on his part, agreed, in thirty days from the date of said agreement, and upon the deed of said promises, furnace, etc., being tendered to him, to pay to said Bowen Eaton, or his order, the sum of $1,000, and, at the same time, to make to the said Isaac Eaton, his heirs and assigns, a good warranty deed of said premises, with s steam *saw and grist-mill, and two dwelling-houses thereon, with the appurtenances, situate, etc., and also pay the said Boweü Eaton the sum of $1,500, in twelve months (rom tho date of said agreement, and give him immediate possession of said premises, with the appurtenances, etc., the reversion of said premises, then, and still belonging to the said plaintiff, with the said mill, dwelling-houses, and appurtenances, in case the said Bowen Eaton should, neglect to tender such deed, as aforesaid, of the said fifteen acres, with the appurtenances, etc. Yet iho defendants, well-knowing the premises, and that the said Bowen Eaton had wholly neglected to tender to said plaintiff such deed, and had abandoned said contract, and was about to abandon said premises, mill, and dwelling-houses, but contriving, and wrongfully and unjustly intending to injure, prejudice, and aggrieve tho plaintiff in his reversionary estate, and interest of, and in the said premises, mill, and dwelling-houses, with the appurtenances, while the same were in the possession and occupancy of the said Bowen Eaton, under, and by virtue of said contract, and while the said plaintiff was so interested therein, as aforesaid, by reason of the neglect of the said Bowen Eaton to tender such deed, as aforesaid, and of his abandonment of said contract, and by reason of the determination of the said Bowen Eaton immediately to abandon the said premises, mill, and dwelling-houses, to wit, at, etc., on, etc., wrongfully and unjustly, without the leave or license of and against the will of, the said plaintiff, tore down the machinery, by which the said mill was propelled, and took and removed the same away, and took and removed away the millstones, mill-irons, bolting-cloths, etc., and broke, cut, and destroyed the timber work, frame, and gearing belonging to said mill, etc. By means of which said several prem *289 ises, the plaintiff is greatly injured and agrieved, in his said reversionary interest and estate, in the premises aforesaid.
We have thus spread out the declaration nearly in its words, 'and we think it requires more than ordinary legal astuteness to discover any merits in the plaintiff’s case.
*The count in the case at bar was, probably, intended to redress what the plaintiff supposed was, and what he denominates, an injury to a reversionary interest. If such wore the injury, and such the action, whether the estate be realty or personalty, numerous authorities may be cited to sustain the position. But what is the case made?
On August 21,1839, the plaintiff contracted with the defendant, Bowen Eaton, to convey to Isaac Eaton tho premises, or locus in quo. Tho deed was to be executed in thirty days. Under this contract Bowen Eaton went into possession.
By the same contract the defendant, Bowen Eaton, agreed to convey to the plaintiff fifteen acres of land, with a furnace, etc., and to execute the deed in thirty days from tho date of the contract. The plaintiff to have immediate possession, and when Eaton should tender the deed of the furnace property, the plaintiff to deliver the deed of the mill property, and pay to Eaton 81,000, and 81,500 more in twelve months, and give to Bowen Eaton immediate possession of the mill property. It will thus bo seen this was an exchange of land, and each party acquired the immediate and lawful possession under the contract. The covenants are, throughout, mutual, to be performed at the same time.
It follows that neither party could abandon, rescind, or put an end to this contract without the consent of the other ; or, without doing some positive act, on his part, by which to put the other in the wrong. Before the plaintiff could forfeit the defendant Eaton’s contract, it was necessary for him to tender the deed of the mill property, offer to pay the 81,000, and demand performance by the defendant, Eaton.
This was not done, and, from anything that appears, the contract is still a valid, binding, and obligatory contract, and either party, by performance, or an offer to perform, on his part, may comjjol the other to execute it. The defendant, Bowen Eaton, being in possession as vendee, though ho has not the legal title, is, while such contract continues open, tho solo owner of the estate in equity. I say as vendee, because *he bought tho property, *290 and he paid for it, and he was put in possession, though the deed was to be made to Isaac.
A purchaser thus in possession may control the property, build up, or tear down-, and use it in any way conducive to his own feelings, or interest, provided he do not injure another by such use.
The plaintiff avers that the defendant intends to abandon the property, and not perform the contract, and that these acts are an injury to his reversionary interest; but the fact is, he has no such reversionary interest at present — ho had none when the suit was brought, and it may at least be doubtful whether he ever will have any to injure.
Such contingencies as these, so remote, so uncertain, can be neither seen, felt, nor'handlod by the law. Supposed injuries to such contingencies can not, at law, be measured, and the law is incompetent to mete out redress.
In cases somewhat analogous to this, courts of equity will interfere by injunction, to stay waste, or groat injury to property, by a vendee who is insolvent, until he performs, or gives security to perform, his contract; but I know of no ease in equity, sustained against a solvent vendee, who can be made to respond in damages, or by a comjilianco with his contract.
In the case at bar it is clear to us the action, so far as this first Count in the declaration is concerned, can not bo sustained for an ■injury to a reversionary interest.
Can it bo viewed in any more favorable light for the plaintiff? Suppose wo call it an action of waste, as suggested by one of the ■learned counsel? At common law, waste would lie against tenants in dower, tenants by the courtesy, guardians in socage or chivalry, etc.; but it would not lie against a lessee for life, or ■years, and the reason was, these estates were created by grant, -,and the grantors might have secured themselves against waste by -special provision in the grant.
'It was only when the estate was enacted by law, that the action ■of waste was maintainable, until the 6 Eliz. 1, when it was given by the statute of Gloucester, against tenants for life, or years, or per autre vie. 4 Kent, 79.
^-'Chancellor Kent supposes the provisions of this statute were imported by our ancestors, and ingrafted, with the- whole body of the common law, into our system of jurisprudence, as ap *291 pli cable to our local circumstances; but however this maybe for the purposes of the case at bar, it is of little moment to inquire; for, if its provisions were incorporated into the statutes of Ohio, it could hardly be brought up to the rescue of this count in the declaration. ■
Between vendor and vendee, the latter is not a tenant of the former. The vendor, after sale, has no interest in the estate, unless it be an equitable lien for the purchase money, and so far as this lien is concerned, the vendee holds the land as trustee to the vendor, and not as tenant, lessee, guardian in socage or chivalry — ■ terms that are strangers to our system.
Waste is an incident to certain classes of estates, but not to such an estate as the vendor holds in the land, after sale, or conveyance. Rights resulting from a certain relation can only be claimed when such relation exists, and no relation exists here to authorize such action.
We are of opinion the first count is bad, and that the demurrer should be sustained. Case remanded.